FILED'05 OCT 24 12:36USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CORA J. HAMILTON, | CV. 04-6174 TC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| JOANNE B. BARNHART<br>Commissioner of Social Security, | |
| Defendant. | |

COFFIN, Magistrate Judge:

Plaintiff Cora Hamilton brings this action pursuant to the Social Security Act, 42 USC § 405(g)("the Act"), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security Income ("SSI") benefits and disability insurance benefits under Title II of the Act. For the reasons set forth below, I reverse the decision of the Commissioner and remand this matter for the calculation of benefits.

///

1 - OPINION AND ORDER

## ALJ's DECISION

At step one, the ALJ found that Hamilton had not engaged in substantial gainful activity since the alleged onset of her disability on May 31, 1999, at which time Hamilton was 53 years old.

At step two, the ALJ found that, as of December 31, 2000, Hamilton's date last insured, she had the medically determinable severe impairments of "possible fibromyalgia," and had prior surgeries for bladder repair in March 1997, a lumbar laminectomy and fusion in 1994, and a right shoulder decompression in October 1993. Tr. 26.

At step three, the ALJ found that Hamilton's impairments did not meet or medically equal the criteria of any listed impairments.

At step four, the ALJ found that Hamilton was not fully credible and that she retained the residual functional capacity to perform a limited range of light exertion work which does not include climbing ropes, ladders, or scaffolds, or kneeling, which allows climbing ramps or steps, and stooping or crouching only occasionally, and which does not require fine manipulation with her right hand or the ability to write for longer than 20 minutes at a time. The ALJ concluded that Hamilton could return to her past relevant work as an apartment manager.

In the alternative, at step five, the ALJ found that Hamilton could perform other work, including work as a receptionist/clerk.

## DISCUSSION

I. Step Four Analysis

The ALJ found that Hamilton could return to her past work of apartment manager as she performed it, but not as it is generally performed in the economy. Tr. 24. The ALJ stated that

2 - OPINION AND ORDER

the job, as Hamilton had performed it, was light work. However, the Vocational Expert ("VE") testified that the apartment manager work, as Hamilton performed it, required a medium exertion level, with occasional lifting of up to 50 pounds. Tr. 457-58.

The ALJ found that Hamilton's residual functional capacity limited her to no more than light work, and to lifting no more than 20 pounds. Therefore, the ALJ's finding at step four that Hamilton is able to return to her past work as an apartment manager is not supported by substantial evidence.

## II. Step Five Analysis

The ALJ found that Hamilton retains the ability to perform the job of receptionist/clerk, listed, according to the VE, as Dictionary of Occupational Titles ("DOT") number 237.367-010. Tr. 25, 464. The job description is:

> Schedules appointments with employer or other employees for clients or customers by mail, phone, or in person, and records time and date of appointment in appointment book. Indicates in appointment book when appointments have been filled or cancelled. May telephone or write clients to remind them of appointments. May receive payments for services, and record them in ledger. May receive callers. May operate switchboard.

However, the VE testified that in "[a]ny clerical position, I usually think they have to be able to write at least 50 percent of the time." Tr. 463. The ALJ found that Hamilton was unable to write for longer than 20 minutes at a time, and required a 30 minute break before she was able to write again. Tr. 460-63. The ALJ's decision that Hamilton was able to perform the work of a receptionist/clerk is not supported by substantial evidence.

/ / /

/ / /

3 - OPINION AND ORDER

III. Credibility

The ALJ found Hamilton's assertions of disabling pain prior to her date last insured not credible. He wrote:

> No treating or examining physician has endorsed disability, and the treating records on and before December 31, 2000, do not support the existence of disabling pain and functional restriction. The claimant had a laminectomy in 1994 with no further surgeries, and a return to full time employment. Since 1998, she has used a spinal stimulator daily with success in pain management such that she was able to function and work at substantial gainful activity levels. When the battery failed she experienced a brief return of back symptoms, but the battery was promptly replaced in July 2000. Although the battery subsequently failed again and was not replaced later, this was well after December 31, 2002. It is noteworthy that at the hearing, Ms. Hamilton could not even remember the last time she went to her neurosurgeon which is striking given the extent of pain and functional restriction to which she testified. The record indicates a diagnosis of fibromyalgia reported by the claimant prior to December 31, 2000, and that diagnosis was subsequently cited in various records. However, it is noted that pursuant to the American College of Rheumatology, a diagnosis of fibromyalgia requires the following criteria: a history of widespread pain present for at least 3 months, plus pain on digital palpation (not simply tenderness) in 11 of 18 designated tender point sites. The record contains no evidence that the claimant ever underwent appropriate rheumatological evaluation, or any physical examinations which support the existence of the requisite diagnostic criteria for that impairment. Oddly, the claimant testified that she was not advised to do exercise although this is the standard course of treatment for fibromyalgia.
>
> . . . .
>
> Regarding her fingers, the claimant testified that she stopped quilting some 3-4 years ago, but this is contradicted by her own activity form wherein she reported in May 2001...that she quilts for 30-45 minutes every two weeks, does crossword puzzles, though it hurts [citation omitted]. Also, per her testimony, she drives about twice a week up to 15 miles, where she uses her hands. She testified that she goes to the bathroom 15-20 times a day, taking up to 7 minutes each time, asserting that her 1993 bladder surgery did not work. The surgery records, however, reflect rather standard bladder repair without complications, and apparent success, after which the claimant returned to work at substantial gainful activity levels. Notably, the records

> even prior to the bladder repair indicated she was only going to the bathroom 3-4 times a day. Regardless, her assertions are unsupported by the record, and inconsistent with the fact that she has not returned for treatment if her symptoms are as stated. She also failed to explain why should could not use pads to function in the workplace, and she has not indicated that she needs them even for her normal daily activities. It is further noted that in June 1999 at the claimant's first visit, Dr. Kosek noted "excessive pain behavior" [citation omitted]. he again noted "moderate increased pain behavior" in January 2002 [citation omitted]. These are indications of exaggeration of symptoms. All of the above factors, when considered in combination, reflect adversely on the claimant's credibility regarding the extent of her limitations as of December 31, 2000. Tr. 23.

The ALJ's first assertion, that "no treating...physician has endorsed disability," is incorrect. As detailed below, Hamilton's treating physician opined that she was improved but still completely disabled from working three months after her date last insured.

Hamilton had a spinal stimulator implanted in 1998. She received epidural spinal injections in November 1998 for back pain. Tr. 273. She stopped working in June 1999 and began at that time seeing Dr. Kosek for pain management, apparently because the spinal stimulator did not provide adequate pain control.

The ALJ notes that Hamilton could not recall, in April 2003, the name of the neurosurgeon who performed her laminectomy in 1994, and infers a lack of credibility given the extent of her pain complaints. However, the record confirms that Hamilton sought constant medical attention for her pain complaints from a pain specialist, Dr. Kosek. That Hamilton could not recall the name of her neurosurgeon is not a clear or convincing reason to find her incredible.

The ALJ questions the adequacy of the evidence supporting Hamilton's diagnosis from Drs. Dunn and Kosek of fibromyalgia. This is not a clear or convincing reason to find Hamilton not credible.

The ALJ notes the discrepancy between Hamilton's April 2003 recollection of when she stopped quilting ("three or four years ago,") and her May 2001 statement that she quilted 30-45 minutes every two weeks. This inexact recollection is not a clear or convincing reason to find Hamilton not credible, and there is no evidence that she was being intentionally inconsistent.

As to Hamilton's assertions regarding incontinence, she testified that her surgical repair only lasted about six months, and that she uses pads, but it is embarrassing. Tr. 449. Hamilton stated that her doctor advised her that another surgery was required, but that "it is such a horrendous surgery that I couldn't face the thoughts of having another one." Id. Hamilton's testimony regarding her incontinence does not constitute a clear or convincing reason to find her not credible.

The final reason offered by the ALJ for finding Hamilton not credible are Dr. Kosek's comments that "[t]here is some excessive pain behavior," in June 1999, and "moderate increased pain behavior" in January 2002. However, at the June 1999 appointment Dr. Kosek prescribed Vicodin, and in June 2000, October 2000, and March 2001, he noted "no excessive pain behavior." Tr. 285, 281, 277. Accordingly, Dr. Kosek's comments do not constitute a clear or convincing reason to find Hamilton not credible.

IV. Treating Physician Opinion

Peter Kosek, M.D., specializes in pain management. He treated Hamilton from at least June 1999 until at least March 2001. On March 27, 2001, Dr. Kosek saw Hamilton in a four month follow-up visit. He noted that she was "greatly improved," and stated:

> Unfortunately, she clearly does not have the capacity to be gainfully employed. She has significant increase in her pain with even short periods of sitting, and the duration of this pain has clearly compromised

her ability to manage stressful situations. Tr. 277.

Accordingly, Dr. Kosek found Hamilton improved since her last visit, which occurred prior to her date last insured, yet unable to work. Dr. Kosek continued Hamilton's pain management medications of methadone and Vicodin, and an implanted spinal stimulator.

The ALJ noted Dr. Kosek's reports, and stated "[n]o treating or examining physician has endorsed disability, and the treating records on and before December 31, 2000, do not support the existence of disabling pain and functional restriction." Tr. 23. The Commissioner argues that because Dr. Kosek's opinion occurred three months after Hamilton's date last insured, it does not and cannot provide a basis for establishing disability on or before December 31, 2000. However, medical evaluations performed after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition. *Lester v. Chater,* 81 F3d 821, 832 (9th Cir. 1996).

The ALJ offers no reason for rejecting Dr. Kosek's uncontradicted opinion that by the time of her date last insured, Hamilton was incapable of gainful employment, she was unable to sit without pain, and her pain compromised her ability to handle stress. The ALJ improperly rejected Dr. Kosek's opinion as to Hamilton's limitations. If credited, the doctor's testimony, coupled with the testimony of the VE, establishes that Hamilton could not work on a regular and sustained full-time basis by December 31, 2000 and, therefore, is disabled. If credited, Hamilton's testimony establishes that she was unable to sustain regular and full-time work by May 31, 1999.

///

///

///

For these reasons, the Commissioner's decision is reversed and remanded pursuant to sentence four of 42 USC S 405(g) for the calculation and award of disability benefits.

Dated this 24th day of October, 2005.

THOMAS M. COFFIN
United States Magistrate Judge